**Herbert Glenn MARTIN,
Plaintiff–Appellant,**

v.

**Michael CATALANOTTO, et al.,
Defendants–Appellees.**

**Eric Leon WILLIAMS,
Plaintiff–Appellant,**

v.

**Daryl HORTON, et al.,
Defendants–Appellees.**

**Nos. 88–3300, 88–3387.**

United States Court of Appeals,
Fifth Circuit.

March 7, 1990.

---

Herbert Glenn Martin, Angola, La., pro se.

Joseph Erwin Kopsa, Asst. Atty. Gen., Baton Rouge, La., for defendants-appellees.

Eric Leon Williams, St. Gabriel, La., pro se.

Before HIGGINBOTHAM, SMITH, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Herbert Glenn Martin and Eric Leon Williams appeal the district court's dismissal of their 42 U.S.C. § 1983 suits because they did not exhaust the prison grievance procedure set up by the Louisiana Department of Public Safety and Corrections. Concluding that the Louisiana prison grievance procedure is an "effective" remedy within the meaning of 42 U.S.C. § 1997e, we affirm.

I

Martin filed suit against three correctional officers at the Louisiana State Penitentiary at Angola, Michael Catalanotto, S. Poret, and Lieutenant Turner. Martin asserts that after he requested protection from an enemy, Catalanotto and Poret beat him while he was handcuffed and shackled. He alleges that the two then called Lieutenant Turner and all three men then assaulted him. He asserts that after the beating, the three guards refused to provide him with medical attention. Martin seeks monetary damages to compensate him for the injuries he received as a result of the beating.

Williams filed suit against Sergeant Daryl Horton, Lieutenant Darryl Johnson, and John Whitley, the warden of Louisiana's Elaine Hunt Correctional Center. Williams alleges that he slipped and suffered back and neck injuries because of a leaking faucet in his cell. He asserts that despite his complaints about the faucet Sergeant Horton and Lieutenant Johnson did nothing to fix it. He asserts that the guards delayed in obtaining medical treatment for him. Williams seeks money damages for his injuries.

The district court ordered Martin and Williams to exhaust the Louisiana prison grievance procedure. When they did not exhaust the court dismissed their suits.

II

Section 1997e of the Civil Rights of Institutionalized Persons Act, or CRIPA, 42 U.S.C. § 1997e, authorizes states to set up prison grievance procedures which district courts can order prisoners to exhaust before proceeding with their civil rights suits. Section 1997e requires these procedures to be approved by the Attorney General or a federal district court as meeting certain minimum standards [1] before a court can order exhaustion of the procedure. Section 1997e is an exception to § 1983's normal non-exhaustion rule and is not intended to apply when a § 1983 action "raises issues which cannot, in all probability,

---

**1.** Section 1997e requires prison grievance procedures to provide:

 (A) for an advisory role for employees and inmates of any jail, prison, or other correctional institution (at the most decentralized level as is reasonably possible), in the formulation, implementation, and operation of the system;

 (B) specific maximum time limits for written replies to grievances with reasons thereto at each decision level within the system;

 (C) for priority processing of grievances which are of an emergency nature, including matters in which delay would subject the grievant to substantial risk of personal injury or other damages;

 (D) for safeguards to avoid reprisals against any grievant or participant in the resolution of a grievance; and

 (E) for independent review of the disposition of grievances, including alleged reprisals, by a person or other entity not under the direct supervision or direct control of the institution.

42 U.S.C. § 1997e(b)(2)(A)–(E).

be resolved by the grievance resolution system, including cases where imminent danger to life is alleged. Allegations unrelated to conditions of confinement, such as those which center on events outside of the institution, would not appropriately be continued for resolution by the grievance resolution system." *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 2565 n. 12, 73 L.Ed.2d 172 (1982) (quoting legislative history). Under § 1997e district courts can only order the exhaustion of "such plain, speedy, and effective administrative remedies as are available." 42 U.S.C. § 1997e(a)(1).

Pursuant to enabling legislation, La.Rev. Stat.Ann. §§ 15:1171–1177 (West Supp. 1989), the Louisiana Department of Public Safety and Corrections set up such a procedure for Louisiana prisoners. The United States District Court for the Middle District of Louisiana approved the procedure as meeting § 1997e's minimum standards.

 Although we have held that the dismissal of a Louisiana prisoner's § 1983 suit for failure to exhaust the Louisiana prison grievance procedure is within the discretion of the district court, *Lay v. Anderson,* 837 F.2d 231, 233 (5th Cir.1988); *Rocky v. Vittorie,* 813 F.2d 734, 736 (5th Cir.1987), we have not addressed the propriety of dismissal for failure to exhaust in a case in which the prisoner seeks damages for personal injury. Martin and Williams admit that the Louisiana procedure does not exempt their claims from exhaustion, but argue that since the Louisiana procedure does not authorize officials to grant the remedy they seek, a money judgment, *Mack v. State,* 529 So.2d 446, 448 (La.App. 1st Cir.), *cert. denied,* 533 So.2d 359 (1988), it is not an "effective" remedy within the meaning of § 1997e which they can be ordered to exhaust.

It is true, of course, that money damages cannot be granted by the Louisiana procedure. It does not follow, however, because a prisoner prays for money damages that the claim is without issues that in all proba-

bility cannot be resolved by the grievance system. Federal courts have been inundated with claims by state prisoners. Between 1966 and 1988 the number of such suits increased from 218 to 24,421. Indeed, in the past year 10.2% of the civil docket of the federal district courts and 12.5% of the docket of federal courts of appeals were prisoner civil rights suits. Prisoner petitions represented 29.6% of all filings in the Fifth Circuit in fiscal year 1989. Many of these claims include money damages in their prayers for relief.

Yet, the reality is that underlying many prisoner suits for money damages is a complaint about prison conditions, conditions which can be remedied through the grievance procedure. After adoption of the administrative remedy South Carolina experienced a 33% decrease in 1983 suits by prisoners. California prisoners received complete or partial relief in over half of 40,000 grievances considered.[2]

In this case Williams alleges that he was injured because officials did not fix a leaking faucet in his cell and that officials delayed giving him medical care. Martin's difficulties arose from his complaints that he was not being adequately protected from dangerous prisoners. He also alleges that officials delayed in obtaining medical treatment for him. These issues of prison conditions and safety are prime candidates for the grievance process.

The statutory procedure strikes for nonjudicial resolution of disputes within the prison system. It does not deny prisoners access to federal court, but rather delays access by insisting on an exhaustion of the prison grievance system. We would emasculate the statute if we were to conclude in a mechanical fashion that asserting a claim for money damages means a fortiori that the complaint raises no issues that can in probability be resolved by the grievance procedure. We know from much experience that many of these claims for "damages," often for millions of dollars, prove to be little more than expressions of anger

---

**2.** Donald P. Lay, *Exhaustion of Grievance Procedures for State Prisoners Under Section 1997e of* the Civil Rights Act, 71 Iowa L.Rev. 935 (1986).

and frustration with prison conditions. This being the case, the grievance process can be effective in resolving a prisoner's claim even though his allegations suggest that the grievance procedure is not an effective remedy.[3] When a claim is truly for money damages, it will be filed in federal court after exhaustion.

AFFIRMED.

---

3. A study for the Committee on Federal–State Jurisdiction of the Judicial Conference noted that prisoner civil rights suits in the Middle District of Louisiana have decreased 33% since judicial approval of that state's procedure. Other factors may have contributed to this decrease, but some part was plainly attributable to the grievance procedure.