Tanya MARSH, Plaintiff–Appellant,

v.

Johnnie W. JONES, Jr., Warden,
et al., Defendants–Appellees.

No. 94–30458.

United States Court of Appeals,
Fifth Circuit.

June 2, 1995.

Tanya Marsh, Mansfield, LA, pro se.

Before REYNALDO G. GARZA, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Tanya Marsh (Marsh) appeals the district court's dismissal of her suit under 42 U.S.C. § 1983 for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a)(1). We affirm.

## Facts and Proceedings Below

On April 12, 1994, Marsh, an inmate at the Louisiana Correctional Institute for Women in St. Gabriel, Louisiana, filed this section 1983 suit against various prison officials, asserting several claims stemming from a June 24, 1993, slip and fall accident.[1] As a result of falling on a wet floor near her cell, Marsh alleges that she suffered head injuries requiring stitches, that her engagement ring was damaged, and that prison officials were deliberately indifferent to her serious medical needs.[2] On October 25, 1993, Marsh filed an administrative grievance, but the prison dismissed her complaint as untimely because it was filed more than thirty days after the incident.[3]

In her pro se complaint, Marsh sought only monetary damages.[4] The district court assigned Marsh's case to a magistrate judge, who, on April 18, 1994, issued an order requesting Marsh to show cause why her suit should not be dismissed under 42 U.S.C. § 1997e(a)(1) for failure to exhaust administrative remedies. In her response, Marsh attempted to explain her failure to file a timely administrative grievance, and in the alternative, argued that she did not need to exhaust her administrative remedies because the value of her ring exceeded the fifty-dollar limit allowable for replacement of damaged property under the prison administrative procedures and because prison administrative procedures did not provide for recovery of money damages for her other claims.

On May 26, 1994, the magistrate judge issued a report concluding that Marsh offered no justifiable explanation for her failure to make a good faith attempt to exhaust her administrative remedies. The magistrate judge also rejected Marsh's argument that she should not be required to exhaust administrative remedies because the value of her ring exceeds the prison regulations' fifty-dollar limit for lost or damaged property claims. The magistrate judge reasoned that the extent of the loss is best evaluated as of the time of the loss instead of several months later and that the prison's administrative remedies were well suited to address property claims. The magistrate judge's report recommended that the district court dismiss

---

1. Marsh's complaint named Warden Johnnie Jones; Deputy Warden Nellie Fanguy; Richard Stalder, the Secretary for the Louisiana Department of Public Safety and Corrections; Dr. Raynando Banks, a former prison doctor; and Jeannette Jones, the prison's Director of Medical Treatment; as defendants.

2. Marsh received nine stitches at Earl K. Long Hospital as a result of her fall. In her section 1983 suit, Marsh complains that prison officials refused to take her back to the hospital for the removal of the stitches and instead arranged for Dr. Banks, a prison doctor, to remove them. Marsh also claims that Dr. Banks delayed in removing her stitches until mid-July 1993 and that this delay resulted in an enlarged scar.

3. Marsh's grievance is dated October 13, 1993, but the prison's stamp indicates that it was not received until October 25, 1993. Even if Marsh did file her grievance on October 13, 1993, it would still be untimely because the incident occurred on June 24, 1993, and the stitches were removed in July 1993.

4. In the prayer for relief in her complaint, Marsh stated that she was seeking "compensation for personal injury and damaged property ... [and] damages in compensation for constitutional injury, [and] civil rights violations ..." In her administrative grievance complaint, Marsh also stated the relief that she was seeking: "I'm seeking Judicial Relief for damages for personal injury, civil rights violations, constitutional violations, and damages for my personal engagement ring."

Marsh's suit pursuant to 42 U.S.C. § 1997e(a)(1). Overruling Marsh's objections, the district court adopted the magistrate's report and dismissed Marsh's complaint with prejudice on July 13, 1994. Marsh filed a timely notice of appeal.

## Discussion

Marsh argues that the district court erred in dismissing her suit under 42 U.S.C. § 1997e(a)(1) for failure to exhaust prison administrative procedures. Although Marsh concedes that she did not file a timely request for administrative relief, she asserts that exhaustion would be futile because she claims that the prison administrative procedures do not permit the award of money damages for her personal injury claim and because prison regulations cap recovery for property claims at fifty dollars.

Section 1997e(a)(1) of the Civil Rights of Institutionalized Persons Act of 1980 (the Act) states:

"[I]n any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed 180 days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available."

In *Martin v. Catalanotto*, 895 F.2d 1040 (5th Cir.1990), we held that a prisoner seeking only money damages in a section 1983 suit must satisfy section 1997e's exhaustion requirement even if the prison administrative procedures did not authorize the award of monetary damages. *See id.* at 1043 ("When a claim is truly for money damages, it will be filed in federal court after exhaustion."). Today we reconsider *Martin* in light of *McCar-*

*thy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

In *McCarthy*, a federal prisoner filed a *Bivens* suit against prison officials, seeking monetary damages for alleged deliberate indifference to his serious medical needs. The district court dismissed the suit because the plaintiff had failed to exhaust administrative remedies. The Tenth Circuit affirmed, reasoning that the courts may impose an exhaustion requirement for the filing of *Bivens* complaints. The Supreme Court reversed. Because *McCarthy* involved a *Bivens* claim asserted by a federal prisoner, the exhaustion requirement of section 1997e did not apply. Nevertheless, the defendants in *McCarthy* argued that section 1997e's exhaustion requirement for section 1983 suits represented a congressional policy favoring exhaustion of prison grievance procedures before filing constitutional claims against prison officials in federal court. Rejecting this argument, the Court noted that section 1997e specifically conditioned the exhaustion requirement on the existence of "effective administrative remedies" and emphasized that the prison grievance procedures at issue did not provide for the award of money damages. *Id.* at 150, 153–55, 112 S.Ct. at 1089, 1091.[5]

■ Although *McCarthy* involved a *Bivens* suit by a federal prisoner, we have applied its reasoning to other types of prisoner suits. *Arvie v. Stalder*, 53 F.3d 702, 5th Cir.1995 (section 1983 suit); *Rourke v. Thompson*, 11 F.3d 47 (5th Cir.1993) (section 2241 petition). In *Rourke*, we held that a prisoner seeking only injunctive relief must exhaust prison administrative procedures before filing suit in federal court. *Id.* at 50. In *Arvie*, we held that a state prisoner seeking both injunctive and monetary relief must exhaust prison administrative procedures before filing a section 1983 suit in federal court.

---

**5.** Discussing section 1997e's requirement of effective administrative remedies, the Court looked to the House Conference Committee Report, which stated: " 'It is the intent of the Congress that the court not find such a requirement [of exhaustion] appropriate in those situations in which the action brought ... raises issues which cannot, in reasonable probability, be resolved by the grievance resolution system.' " *Id.* at 151 &

n. 4, 112 S.Ct. at 1089 & n. 4 (quoting H.R.Conf. Rep. No. 96–897 at 15 (1980)). The Court also pointed to the following statement from the Department of Justice: " 'Presumably, where monetary relief was the sole adequate remedy and could not be obtained through a grievance procedure, exhaustion would not be appropriate.' " *Id.* (citing 46 Fed.Reg. 3845 (1981)).

Marsh's case presents a third scenario: whether a state prisoner seeking *only* money damages under section 1983 must exhaust prison administrative remedies or face dismissal of his suit under section 1997e. The import of *McCarthy* is clear: A district court should not require exhaustion under section 1997e if the prisoner seeks only monetary damages and the prison grievance system does not afford such a remedy. Accordingly, we hold that a district court cannot invoke section 1997e to require a state prisoner seeking only money damages to exhaust prison administrative remedies that do not authorize monetary relief. *See Prunty v. Branson*, 1993 WL 328037 (6th Cir. Aug. 27, 1993), 7 F.3d 234 (table) (holding that state prisoner seeking only money damages in section 1983 suit need not exhaust administrative remedies if such remedies do not provide for the award of money damages) (citing *McCarthy*, 503 U.S. at 149–51, 112 S.Ct. at 1089). To the extent that our decision in *Martin* is inconsistent with this holding, we believe it has been in substance overruled by *McCarthy*.[6]

Section 1997e provides that the district court should grant an inmate a continuance "in order to require exhaustion of such plain, speedy, and effective remedies as are available." 42 U.S.C. § 1997e(a)(1). Although the language of the statute does not explicitly grant a district court the power to dismiss a suit, we have held that a district court has the power to dismiss section 1983 suits, following a section 1997e continuance, if a prisoner fails to exhaust his administrative remedies. *Rocky v. Vittorie*, 813 F.2d 734, 736 (5th Cir.1987). In so holding, we reasoned, "[w]ithout the prospect of such a dismissal, a prisoner could circumvent the exhaustion requirement by simply doing nothing for ninety days and then resuming his litigation in the district court." *Id.* However, the court in *Rocky* held that, before dismissing a suit with prejudice under section 1997e, the district court must determine whether the plaintiff "made a good faith attempt to exhaust his administrative remedies." *Id.* at 737. In *Arvie*, we again recognized a district court's power to dismiss a prisoner's suit under section 1997e for failure to make a good faith attempt to exhaust administrative remedies. *Arvie* at 705.

■ The district court dismissed Marsh's case under section 1997e. Because the prison had already rejected Marsh's administrative grievance as untimely, her administrative remedies were foreclosed, and a continuance would have served no purpose. When a section 1997e continuance would serve no purpose, a district court still has the power to dismiss a prisoner's suit under section 1997e for failure to exhaust administrative remedies. The reasoning of *Rocky* applies in this context. Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies. *Rocky*, 813 F.2d at 736. Thus, we hold that a district court has the power to dismiss a prisoner's section 1983 suit under section 1997e even when administrative relief is time-barred or otherwise precluded.[7]

---

6. Our decision in *Rourke* foreshadowed *McCarthy's* abrogation of *Martin*. In *Rourke*, we emphasized that "[t]he linchpin of the *McCarthy* holding was the failure of the prescribed administrative remedies to provide for the monetary damages sought by the prisoner." *Rourke*, 11 F.3d at 50.

7. We observe that our holding need not produce harsh or unjust results. First, the plain language of section 1997e provides that a district court should require exhaustion only "if the court believes that such a requirement would be appropriate and in the interests of justice." Second, under *Rocky*, a district court may only dismiss a suit under section 1997e after determining that the prisoner failed to make a good faith attempt to exhaust administrative remedies. *Rocky*, 813 F.2d at 736. Third, we note that section 1997e does not require a district court to insist on exhaustion in every case. *See McCarthy*, 503 U.S. at 149–51, 112 S.Ct. at 1089 ("[I]f an inmate fails to meet filing deadlines under an administrative scheme, a court has ample discretion to determine that exhaustion nonetheless should be forgone."). Fourth, section 1997e(a)(2) requires that the state administrative procedures meet certain minimum standards. *See Martin v. Catalanotto*, 895 F.2d 1040, 1042 (5th Cir.1990) (holding that the administrative remedy procedures promulgated by Louisiana meet section 1997e's minimum requirements).

Applying these holdings to Marsh's case, we must first determine whether the Louisiana Department of Public Safety and Corrections (LDPSC) administrative procedures permit Marsh to recover monetary damages for her claims. In her brief, Marsh asserts that the prison administrative procedures do not permit the recovery of monetary damages for her personal injury claim and cap the maximum recovery for property damage claims at fifty dollars. Our research reveals that Marsh's characterization of the relief available in the Louisiana prison administrative procedures is partly erroneous. Pursuant to 42 U.S.C. § 1997, the Louisiana legislature enacted LSA–RS 15:1171 *et seq.*, the enabling statute authorizing the LDPSC to promulgate an Administrative Remedy Procedure (ARP) for inmate complaints against the state. The enabling statute provides that the ARP will dispose of all inmate complaints and grievances against the state and that "[s]uch complaints and grievances include but are not limited to any and all claims seeking monetary, injunctive, declaratory, or any other form of relief authorized by law and by way of illustration includes actions pertaining to conditions of confinement, personal injuries, medical malpractice, [and] time computations...." LSA–RS 15:1171(B). LSA–RS 15:1171(C) provides that "[t]he department or sheriff may also ... promulgate rules and regulations governing the recommendation, review, and approval of an award for monetary relief." LSA–RS 15:1171(C). We note that LSA–RS 15:1171 did not originally authorize the LDPSC to award money damages. *See Bellard v. Louisiana Correctional & Indus. Sch.*, 647 So.2d 1237, 1239 (La.Ct.App.3d Cir. 1994) (describing 1989 amendments to LSA 15:1171 that explicitly granted the LDPSC the authority to award money damages); *Gibson v. Barnes*, 597 So.2d 176, 177 (La.Ct. App. 1st Cir.1992) ("[LSA–RS 15:1171] was amended [on June 30, 1989] ... to provide that administrative remedy procedures could be adopted to resolve complaints and grievances including actions pertaining to conditions of confinement as well as personal inju-

ries, medical malpractice, and other tort actions...." ).[8]

■ In her section 1983 complaint, Marsh sought monetary damages for Defendants' deliberate indifference to her serious medical needs as well as for damage to her engagement ring. Marsh characterizes her deliberate indifference claim as a claim for money damages for personal injury and she could thus obtain monetary damages through the LDPSC administrative remedies. Before dismissing Marsh's case pursuant to section 1997e, the district court adopted the magistrate judge's report determining that Marsh failed to offer a justifiable explanation for her failure to make a good faith attempt to exhaust her administrative remedies. Accordingly, we conclude that the district court's dismissal of Marsh's personal injury claim pursuant to section 1997e was well within its broad discretion.

■ Marsh also argues that the district court erred in dismissing her claim based on the damage to her ring because its value exceeds the fifty-dollar limit on recovery for lost or damaged property under the prison ARP. The magistrate judge rejected this argument, reasoning that the extent of the loss is best evaluated at the time of the loss instead of several months later. We need not address this argument because we hold that Martin's claim seeking money damages for the damage to her engagement ring is not actionable under section 1983. In considering Marsh's section 1983 claim based on damage to her engagement ring, our first inquiry is whether Marsh was deprived of a right secured by the Constitution. *Baker v. McCollan*, 443 U.S. 137, 145–48, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.").

In her complaint, Marsh alleged that Defendants "breached a duty owed to plaintiff;

8. When the inmates in *Martin* filed suit, LDPSC regulations did not permit an inmate to recover money damages through the prison ARP. *Mar-*

*tin*, 895 F.2d at 1042 ("It is true, of course, that money damages cannot be granted by the Louisiana procedure.").

and are liable for damages." Specifically, Marsh alleged that a leaking or sweating air conditioning unit made the floor wet and that Defendants failed to warn inmates of the wet floor, and that, as a result of Defendants' conduct, she slipped and damaged her ring. Because Marsh's claim for damage to her engagement ring is a garden-variety negligence claim, we hold that it is not actionable under section 1983. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (holding that negligence is not actionable under section 1983); *see also Brummett v. Camble*, 946 F.2d 1178, 1183 (5th Cir.1991), *cert. denied*, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992) ("Not every common law tort committed by state or local government officials is actionable under § 1983.") (citation omitted).

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.