**Angel SANTIAGO, Plaintiff,**

v.

**Deputy Superintendent MEINSEN, Captain Maly, Lieutenant Glass, Sergeant Whitney, Sergeant B. Rivera, Department of Correctional Services of New York, Defendants.**

**No. 99 Civ. 3958(SAS).**

United States District Court,
S.D. New York.

Feb. 25, 2000.

---

Angel Santiago, Orleans Correctional Facility, Albion, NY, pro se.

David Camuzo, Assistant Attorney General, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Pro se plaintiff Angel Santiago brings suit under 42 U.S.C. § 1983, alleging that defendants Deputy Superintendent William Meinsen, Captain John Maly, Lieutenant Glass, Sergeant James Whitney and Sergeant B. Rivera were deliberately indifferent to his safety needs in violation of the Eighth Amendment.[1] Defendants are

---

1. Although plaintiff named the Department of Correctional Services of New York ("DOCS") as a defendant, DOCS is a state agency and thus insulated from suit under the Eleventh Amendment. *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir.1999) (under the "arm of state" doctrine, state agencies are accorded the "same Eleventh Amendment immunity from suit in federal court as is enjoyed by the State itself"); *see also Santiago v. New York State Dep't of Correctional Servs.*, 945 F.2d 25, 28 n. 1 (2d Cir.1991) (DOCS, as a state agency, is entitled to assert Eleventh Amendment immunity.). Accordingly, DOCS is dismissed from this lawsuit.

all employees of the Downstate Correctional Facility ("Downstate") in Fishkill, New York, where plaintiff contends the alleged constitutional violation occurred.

Defendants now move, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Specifically, defendants contend that: (1) plaintiff failed to exhaust his administrative remedies; (2) plaintiff fails to adequately state a claim under the Eighth Amendment; and (3) even assuming plaintiff has adequately set forth an Eighth Amendment claim, plaintiff fails to plead that defendants Meinsen, Whitney and Maly were personally involved in the alleged constitutional violation. For the following reasons, plaintiff's Complaint is dismissed without prejudice with respect to defendant Rivera. The Complaint is dismissed with prejudice with respect to defendants Meinsen, Maly and Whitney.[2]

## I. Factual Background

The facts set forth below are taken from the Complaint and are presumed true for purposes of this motion.

Plaintiff is an inmate currently incarcerated at the Auburn Correctional Facility in Auburn, New York. The incident in dispute allegedly occurred at Downstate while plaintiff was incarcerated there.

On April 6, 1998, defendant Rivera escorted plaintiff to the "tier hearing room" to provide a urine sample for drug testing. *See* Complaint § IV. When plaintiff realized he was about to undergo drug testing, he informed Rivera that the test results would be positive for drug use. *See id.* Rivera told plaintiff that if plaintiff "were in fact positive for drugs," he would be placed in Downstate's Special Housing Unit (the "SHU").[3] *See id.* Plaintiff claims he immediately told Rivera that he "could not be placed [in the SHU] because [he] had known enemies, listed with corrections in that housing unit." *Id.* Rivera ignored plaintiff's concerns, stating "so what." *See id.* Plaintiff then asked to speak with Whitney, Meinsen or Glass. *See id.* Rivera refused plaintiff's request stating that Whitney, Meinsen and Glass "didn't have time" to speak with him. *See id.*

Following plaintiff's conversation with Rivera, a different Sergeant, whom plaintiff is unable to identify, escorted plaintiff to the SHU. *See id.* Plaintiff reiterated his concerns regarding the SHU to this unidentified Sergeant. *See id.* Specifically, plaintiff told the unidentified Sergeant that he "was being put where [he] had known enemies." *Id.* The Sergeant told plaintiff that he "need not worry", because plaintiff would be locked in his cell for twenty-three hours. *See id.* Plaintiff claims that approximately four hours after he was placed in the SHU, he was cut "severely" on his left hand. *See id.* Plaintiff does not identify who cut him, nor does plaintiff provide any details surrounding the cutting incident, such as whether it took place inside his cell or in a common area.

According to plaintiff, the cut required thirty-two stitches. *See id.* §§ IV, IV-A.

**2.** No motion was filed on behalf of Lieutenant Glass because he was never served with a summons and complaint. However, Lieutenant Glass is dismissed from the case, sua sponte, pursuant to Rule 4(m) which requires service of the summons and complaint within 120 days of filing. Rule 4(m) further provides that if service is not effected within 120 days, the action may be dismissed. Plaintiff filed his Complaint on February 26, 1999. On June 25, 1999, the Court notified plaintiff that the summons and complaint had to be served upon defendants by October 1, 1999 or the

action would be dismissed. Because plaintiff failed to serve Lieutenant Glass, Glass is dismissed from this action. Note, however, that even if Lieutenant Glass had been properly served, he would be dismissed from the case for the reasons stated *infra* Part III.B.

**3.** It is unclear from the Complaint whether prison officials tested plaintiff for drugs on April 6, 1998, or whether they relied on plaintiff's statement that he would test positive for drug use.

Santiago alleges that, as a result of the cut, he has suffered "permanent nerve damage [and] ... extreme pain at times, numbness at other times," and that he no longer has full use of his left arm. *See id.* §§ IV–A, V.

On April 30, 1998, approximately three weeks after the incident, the Department of Corrections transferred plaintiff from Downstate to Attica Correctional Facility ("Attica"). On February 26, 1999, when plaintiff filed his Complaint, he was housed at the Orleans Correctional Facility ("Orleans"). Although plaintiff acknowledged that Orleans has prisoner grievance procedures in place, he admitted that he did not avail himself of these procedures as the "incident did not occur at [Orleans]." *See id.* § II. Plaintiff seeks unspecified compensatory damages for his injury. *See id.* § V.

## II. Legal Standard

Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief." *Scotto v. Almenas,* 143 F.3d 105, 109–10 (2d Cir.1998) (internal quotation marks and citation omitted). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (internal quotation marks and citation omitted). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998). Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d

65, 70 (2d Cir.1996) (internal quotation marks and citations omitted).

However, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers," and are to be construed liberally on a motion to dismiss. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, a pro se complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

## III. Discussion

### A. Dismissal Pursuant to 42 U.S.C. § 1997e(a)

█ Defendants assert that plaintiff's claims should be dismissed for failure to exhaust administrative remedies. *See* Defendants' Memorandum of Law in Support of their Motion to Dismiss the Complaint ("Def.Mem.") at 3–6. A prisoner must exhaust all available remedies before bringing an action regarding prison conditions. *See Wright v. Dee,* 54 F.Supp.2d 199, 204 (S.D.N.Y.1999). The Prison Litigation Reform Act ("PLRA") provides that

no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

New York State has procedures for filing grievances in each of its correctional facilities.[4] *See* N.Y. Correct. Law § 139 (McKinney Supp.1998); 7 New York Codes, Rules and Regulations ("N.Y.C.R.R.") § 701, *et seq.* In his Complaint, plaintiff concedes that he did not pursue his claim with the appropriate

---

**4.** For an in-depth discussion of New York's administrative grievance procedures, see generally *Cruz v. Jordan,* 80 F.Supp.2d 109 (S.D.N.Y.1999).

grievance committee. *See* Complaint §§ IIA, IIB. Plaintiff failed to respond to the motion to dismiss, and he has offered no reasons for his failure to exhaust administrative remedies, except that (i) the incident did not occur at Orleans Correctional Facility, and (ii) because it involved a cutting, plaintiff filed "a notice of intent upon the Attorney General." *Id.* § IID.

Pursuant to the Inmate Grievance Program ("IGP"), Santiago was required to submit a complaint to the Grievance Clerk within fourteen days of the alleged incident. *See* 7 N.Y.C.R.R. § 701.7(a)(1). Exceptions to this time limit may be approved by the IGP supervisor based on mitigating circumstances. *See id.* If there is no informal resolution of the inmate's grievance, a hearing must take place within seven working days after receipt of the grievance. *See* 7 N.Y.C.R.R. § 701.7(a)(4). A written decision, including reasons for the decision, must be communicated to the grievant within two working days of the hearing. *See id.* § 701.7(a)(4)(v).

If the inmate is not satisfied with the decision and is then transferred to another facility, he may continue his appeal of the grievance. *See* 7 N.Y.C.R.R. § 701.3(k)(1). An institutional grievance brought by an inmate who was transferred must be investigated and brought to an Inmate Grievance Review Committee ("IGRC") hearing at complainant's original facility. *See id.* § 701.3(k)(2). If a majority of the IGRC determines that the grievance is moot because it affects only the specific grievant, rather than a class of inmates, the IGRC will dismiss and close the grievance. *See id.* § 701(k)(2)(i).

Whether Santiago was required to bring a grievance and exhaust his administrative remedies turns on three issues. The first is whether failure to protect a prisoner from inmate violence is a "prison condition" covered under the PLRA's exhaustion requirement. If so, the second issue is whether a prisoner must exhaust administrative procedures where his claim is for money damages which the IGP cannot provide. The third issue, in a similar vein, is whether exhaustion is required if the grievance procedures would be futile. These issues will be discussed in turn.

### 1. Inmate Violence as a Prison Condition

The phrase "prison conditions" is nowhere defined in 42 U.S.C. § 1997e(a). However, 18 U.S.C. § 3626, also enacted as part of the PLRA to address suits by prisoners for injunctions and other forms of prospective relief states, in pertinent part, that

> the term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, . . . .

18 U.S.C. § 3626(g)(2). This definition should also apply to 42 U.S.C. § 1997e(a). *See Cruz v. Jordan,* 80 F.Supp.2d 109, 116 (S.D.N.Y.1999) (citing *Beeson v. Fishkill Correctional Facility,* 28 F.Supp.2d 884, 888 (S.D.N.Y.1998), for the proposition that "[w]hen Congress, in one statute, uses the same words in two different places, those words should generally be read to mean the same thing in both places").

Plaintiff's claim is that defendants have violated his constitutional rights by failing to protect him from assault by another inmate. "In essence, failure to protect claims challenge the conditions of a prisoner's confinement." *Soto v. Elston,* 993 F.Supp. 163, 164 (W.D.N.Y.1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). *See also Midgette v. John Doe,* 96 Civ. 6790, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997) (plaintiff's § 1983 claim alleging that prison officials violated his constitutional rights by failing to adequately protect him from attack by fellow inmates dismissed without prejudice for failure to exhaust administrative remedies); *Hanson v. Ches-*

*ney*, 37 F.Supp.2d 399, 401–02 (E.D.Pa. 1999) (same).

Given the definition in 18 U.S.C. § 3626, as well as the precedents discussed above, I find that defendants' alleged failure to protect Santiago from the attack he suffered falls within the term "prison conditions" as used in 42 U.S.C. § 1997e(a). All matters relating to prison conditions, including claims of failure to protect, may be grieved. *Soto*, 993 F.Supp. at 164. Accordingly, plaintiff's claim is subject to the exhaustion requirement contained in that statute.

### 2. Availability of Money Damages

■ There is disagreement among courts in this Circuit as to whether the PLRA's exhaustion requirement applies where administrative remedies do not provide the type of relief the prisoner seeks— here, money damages. *Compare Beeson*, 28 F.Supp.2d at 896 (holding that "Congress, in enacting the PLRA, applied the exhaustion requirement to all actions brought by prisoners with respect to prison conditions ... regardless of what relief is sought") *with Royster v. United States*, 98 Civ. 4109, 1999 U.S. Dist. LEXIS 18252, at *12 (S.D.N.Y. Nov. 23, 1999) (holding that "prisoners seeking monetary relief are not required to exhaust their administrative remedies under § 1997e(a) of the PLRA"). The Second Circuit, while not ruling on the issue, has noted the disagreement. *See Snider v. Dylag*, 188 F.3d 51, 55 (2d Cir.1999) ("We note that it is far from certain that the exhaustion requirement of 42 U.S.C. § 1997e(a) applies to deliberate indifference claims ... under § 1983, where the relief requested is monetary and where the administrative appeal, even if decided for the complainant, could not result in a monetary award."); *Snider v. Melindez*, 199 F.3d 108, 114 n. 2 (2d Cir.1999) (noting disagreement where administrative remedies are unable to provide the relief that a prisoner seeks in his federal action).

Despite this disagreement, the clear trend among district courts in the Southern District of New York is to find exhaustion applicable even where the requested relief, money damages, cannot be awarded by the administrative body hearing the complaint. As stated by Judge Alvin K. Hellerstein,

> the requirement of exhaustion applies to whatever administrative remedies are available in a correctional facility, regardless whether they may be different from the remedies that are available in a subsequent judicial proceeding. In short, if there is a remedy available at the administrative level, it must be pursued by the inmate and exhausted before filing suit in this Court.

*Cruz*, at 118–19 (holding that exhaustion was required even though monetary damages are not available in the IGP). *See also Edney v. Karrigan*, 69 F.Supp.2d 540, 544 (S.D.N.Y.1999) (Sweet, J.) ("[A]n incarcerated plaintiff must exhaust administrative remedies even where he seeks money damages not recoverable under the established grievance procedure.") (citations omitted); *Coronado v. Goord*, 99 Civ. 1674(RWS), 2000 WL 52488, at *2 (S.D.N.Y. Jan. 24, 2000) (same).

I conclude that the exhaustion requirement applies even where the plaintiff is seeking money damages which are not available at the inmate grievance level. To hold otherwise would frustrate congressional intent as the exhaustion requirement could be easily bypassed by inmates simply by adding a claim for monetary relief. *See Cruz*, at 120–21.

### 3. Futility of Grievance Procedures

Plaintiff's excuse for not filing a prisoner grievance, namely, that he was transferred to a different facility from the one where the incident occurred, indirectly raises a futility argument. The issue thus becomes whether an inmate must exhaust administrative remedies before bringing a federal action even where those remedies would be futile. At least one appellate court has

held that an inmate must exhaust administrative remedies regardless of whether or not the administrative action is futile. *See Tafoya v. Simmons*, 116 F.3d 489 (Table), 1997 WL 337513, at *2 (10th Cir. June 19, 1997).

Here, plaintiff's transfer from the facility in which the assault occurred arguably made any grievance futile. Should the plaintiff, however, be rewarded for failing to participate in the grievance procedure by being permitted to bring a federal action without even attempting to resolve his claim administratively? The answer is a decided no. "Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies." *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir.1995); *see also Wright v. Morris*, 111 F.3d 414, 418 n. 3 (6th Cir.1997) ("[I]t would be contrary to Congress' intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by declining to file administrative complaints and then complaining that administrative remedies are time-barred and thus not available.").

■ Accordingly, the appropriate course is to dismiss this action against defendant Rivera without prejudice, permitting Santiago to seek an exception to the fourteen-day time limit from Down-

state. *See Beeson*, 28 F.Supp.2d at 894 ("Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them."). In seeking to file an untimely grievance, plaintiff will be required to offer an explanation for his failure to file a timely grievance. As noted earlier, the IGP supervisor may waive the fourteen-day time bar based on "mitigating circumstances." If the time bar is waived, and the grievance processed, plaintiff will have exhausted his administrative remedies. He will then by able to re-file this lawsuit and proceed on the merits of his claim.

■ If, however, the IGP supervisor finds no such mitigating circumstances, and declines to process plaintiff's grievance, plaintiff may file a new action detailing and explaining:

(1) his failure to file a timely grievance;

(2) his efforts to file a late grievance; and

(3) the alleged mitigating circumstances.

A court will then be required to decide whether plaintiff has exhausted his administrative remedies by seeking to file an untimely grievance or whether the exhaustion requirement should be waived based on mitigating circumstances such as his transfer to a different facility. In this regard, I note that because the exhaustion requirement of the PLRA is not jurisdictional, it may be waived in appropriate circumstances.[5] *See Boos*, 201 F.3d at 183–84.

5. "There has in the past been some confusion about whether the failure of a plaintiff to allow an administrative action to run its course before filing a complaint in federal court affects the federal court's jurisdiction." *Boos v. Runyon*, 201 F.3d 178, 182 (2d Cir. 2000). Whether failure to exhaust is jurisdictional or not "depends on the statute being applied and its intent on the matter." *Id.* Here, the relevant statute is 42 U.S.C. § 1997e(a), which expressly provides that "no action shall be brought" until administrative remedies are exhausted. "A statute requiring exhaustion of administrative remedies may be jurisdictional if it is 'more than a codified requirement of administrative exhaustion'

and contains 'sweeping and direct' statutory language that goes beyond a requirement that only exhausted actions be brought." *Underwood v. Wilson*, 151 F.3d 292, 294 (5th Cir. 1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). The Fifth Circuit has held that " § 1997e(a) contains no such sweeping and direct language barring federal question jurisdiction under 28 U.S.C. § 1331." *Id.* The vast majority of courts that have considered the issue have similarly concluded that exhaustion under the PLRA is not a jurisdictional prerequisite. *See, e.g., Perez v.*

Substantively, whether plaintiff's claim against Rivera, if and when re-filed, will withstand a second motion to dismiss or motion for summary judgment is questionable. Prison officials have a duty to protect prisoners from violent attacks by other inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to hold an official liable for failing to protect a prisoner, plaintiff must show that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that the defendant did in fact draw that inference. *See id.* at 838, 114 S.Ct. 1970.

Plaintiff complained to defendant Rivera about his fear of being placed in the SHU with his "known enemies." Santiago expressed his concern regarding the presence of his known enemies, and Rivera responded "so what," handing him over to an unidentified Sergeant for escort to the SHU. Rivera chose to ignore Santiago's explicit warnings. Whether this rises to the level of deliberate indifference to plaintiff's safety must be held in abeyance pending plaintiff's re-filing of the Complaint.

It should be noted, however, that plaintiff has not alleged whether the injury he sustained was at the hands of one of his known enemies, nor any other details surrounding the assault except for its timing. *See* Complaint § IV. It may turn out that plaintiff's injuries were not at the hand of a known enemy but, rather, were self-inflicted or inflicted by a stranger. In that case, proximate cause would be lacking and the claim would have to be dismissed for lack of causation. These details, including the identity of plaintiff's attacker and whether any of his known enemies were housed at the SHU at the time in question, may be discovered during the grievance procedure, lending further support to a dismissal without prejudice for failure to exhaust. *See Cruz,* 80 F.Supp.2d at 119–20 ("The ability to create a record of the conduct and actions complained of by those close to the scene with intimate knowledge of facts, people and circumstances can be of invaluable assistance in arriving at just and expeditious results, limiting the need for prolonged, imperfect and often difficult discovery in federal court.") (citations omitted).

## B. Eighth Amendment Claim Against Meinsen, Maly and Whitney

Defendants further contend that the Complaint should be dismissed against Meinsen, Maly and Whitney because plaintiff failed to allege that they had any personal involvement in the incident leading to plaintiff's injury. *See* Def. Mem. at 12–15. It is well-settled in this Circuit that "'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 42 U.S.C. § 1983.'" *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)).

Plaintiff fails to allege that Meinsen, Maly or Whitney directly participated in the deprivation of his constitutional right to be protected from inmate violence. The Complaint contains no allegation of their direct involvement in the attack, their knowledge of the likelihood of the attack in advance of its occurrence or their failure to prevent the attack. Accordingly, the supervisor defendants—Meinsen, Maly and Whitney—cannot possibly be found liable as direct participants. I turn now to the question of supervisory liability.

■ A defendant who occupies a supervisory position may be "personally in-

Wisconsin Dep't of Corrections, 182 F.3d 532, 535 (7th Cir.1999) ("Failure to exhaust administrative remedies does not deprive a court of jurisdiction."); *Rumbles v. Hill,* 182 F.3d 1064, 1067–68 (9th Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 787, 145 L.Ed.2d 664 (2000); *Wright v. Morris,* 111 F.3d 414, 421 (6th Cir.1997); *Hayes v. N.Y.S. D.O.C. Officers,* 97 Civ. 7383, 1998 WL 901730, at *7 n. 4 (S.D.N.Y. Dec. 28, 1998).

 

volved" in the alleged deprivation in several ways other than direct participation, such as: (1) failing to remedy the wrong after learning of it through a report or appeal; (2) creating a policy or custom under which unconstitutional practices occurred, or allowing such a policy or custom to continue; and (3) grossly negligent management of subordinates who caused the unlawful condition or event. *See Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). In other words, "supervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of [plaintiffs] by failing to act on information indicating that unconstitutional practices are taking place." *Wright*, 21 F.3d at 501 (citations omitted); *see also Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir.1989) ("Supervisory official may be personally liable if he or she has 'actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.' " (citations omitted)).

■ Plaintiff fails to set forth any allegations that would support a finding of supervisory liability. Again, there is no allegation that Meinsen, Maly or Whitney knew of any substantial risk of harm to plaintiff or of plaintiff's circumstances. Nor is there any allegation that Meinsen, Maly or Whitney created a policy or custom under which unconstitutional practices occurred, or that they were grossly negligent in supervising their subordinates, namely Rivera. Put simply, plaintiff does not allege a single basis upon which to find that these supervisor defendants were personally involved.

## V. Conclusion

For the reasons set forth above, defendants' motion to dismiss is granted without prejudice with respect to defendant Rivera and with prejudice with respect to defendants Meinsen, Maly and Whitney. The Clerk of the Court is directed to close this case.