**MALCOLM PRICE, INC., Petitioner,**

v.

**DISTRICT UNEMPLOYMENT COMPEN-
SATION BOARD, Respondent.**

No. 8576.

District of Columbia Court of Appeals.

Argued May 21, 1975.

Decided Jan. 22, 1976.

Bardyl R. Tirana, Washington, D. C., for petitioner.

Bill L. Smith, Washington, D. C., with whom George A. Ross and Robert J. Hal-

lock, Washington, D. C., were on the brief, for respondent.

Before FICKLING, GALLAGHER and NEBEKER, Associate Judges.

FICKLING, Associate Judge:

This is a petition for review[1] brought by Malcolm Price, Inc. (hereinafter, Price), in its capacity as a principal base period employer,[2] challenging an eligibility determination of the District Unemployment Compensation Board (hereinafter, the Board). The Board determined that Eugene W. Edwards, a former employee of Price, was eligible to receive unemployment benefits without disqualification despite his rejection of Price's offer of reemployment. The issues presented are whether (1) Price failed to exhaust its administrative remedies prior to seeking judicial review, and (2) Price's offer of reemployment constituted an offer of "suitable work" pursuant to D.C.Code 1973, §§ 46–310(c)–(d).

Eugene W. Edwards, a 63-year-old nonunion carpenter with 40 years' experience,

was employed by Price, a home improvement contractor, for about four years until Edwards voluntarily left in July or August of 1973 to take a job with Hawkins Construction Company. At the time of Edwards' departure, Price was paying him at a rate of $5.50 per hour. On August 10, 1973, after a brief period of employment with Hawkins, Edwards left to become a carpenter with Karma Construction Company at a rate of $8.06 per hour. Karma laid off Edwards on December 28, 1973, due to its lack of work.

On · February 25, 1974, Edwards filed a claim for unemployment benefits with the Board. The claims deputy determined Edwards to be eligible without disqualification and he received his first benefit payment on April 19, 1974. On April 25, immediately upon receiving notice of this benefit payment,[3] Price extended a written offer of reemployment to Edwards at the same salary and on the same terms and conditions as his previous employment with petitioner. Edwards failed to respond and, accordingly, Price notified the Board of his refusal to accept its reemployment offer.[4] The claims deputy reviewed the

---

1. D.C.Code 1973, §§ 1–1510, 46–312 (Supp. II, 1975).

2. A principal base period employer is the employer that paid a claimant the greatest amount of wages during the first four out of the last five completed calendar quarters immediately preceding the first day of the claimant's benefit year. D.C.Code 1973, §§ 46–301(f), (u).

 Employers are required to contribute to the unemployment fund and any benefits paid out are charged against each base period employer's account in proportion to the amount of wages paid to the claimant during the base period. D.C.Code 1973, § 46–303(c)(2).

 Employers contribute to the fund an amount proportionate to that being drawn by their former employees. D.C.Code 1973, § 46–303 (c)(5).

3. A dispute arose at oral argument concerning the date on which Price was first notified of Edwards' claim for unemployment benefits. This court requested supplemental briefs on the matter. Price contends that it received no notice of Edwards' claim prior to its re-

ceipt on April 25, 1974, of "Notice to Principal Base Period Employer of Benefit Payment." The Board, on the other hand, contends that its records reflect that a form entitled "Notice to Base Period Employer of Initial Determination of Eligibility" was mailed to Price on March 3, 1974.

In view of the disposition reached in this case, we need not resolve this notice issue. We would only observe that D.C.Code 1973, § 46–311(b), provides that prompt notice of the initial eligibility determination shall be given to the claimant and other parties to the proceedings. In the very least this requires notice to all "base period employers." *District Unemployment Compensation Bd. v. Wm. Hahn & Co.*, 130 U.S.App.D.C. 254, 256 n. 4, 399 F.2d 987, 989 n. 4 (1968).

4. 18 DCRR 204.8(d) provides:
 For the purpose of this section, should a claimant fail to appear within three days, exclusive of Sundays and holidays, from the date of the mailing of the job offer, he shall be presumed at that time to have refused the job offer. This presumption may be

job offer and found that Edwards had established good cause for refusing to accept reemployment with Price.

Price filed an administrative appeal and a hearing was had on May 15, 1974. Edwards testified that $7 per hour was the minimum wage he was willing to accept. Edwards also described difficulties he had encountered with Price's building superintendent [5] and stated, "I'll never work for that guy as long as I live." The appeals examiner noted for the record that, according to Public Employment Service figures, the going rate for nonunion carpenters is $4.71 to $6.50 per hour. By his decision of May 30, 1974, the appeals examiner affirmed the prior eligibility determination. He stated:

> Review of the evidence supports the testimony and evidence presented by the

claimant. He is an experienced craftsman and is justified in demanding $7.00 per hour and in expecting a wholesome work situation. The employment offered to the claimant was, therefore, not suitable, Section 10(c) and Regulation 301.3. Claimant has also met the availability requirements of Section 9(d) of the Act.

Price filed the present Petition for Review with the court on June 24, 1974.[6]

The Board contends that the Petition for Review should be dismissed since Price failed to exhaust its administrative remedies before seeking judicial review. Specifically, the Board contends that Price is barred from seeking judicial review since it did not first appeal to the Board for a review of the appeals examiner's decision pursuant to D.C.Code 1973 § 46–311(e).[7] We agree.

---

overcome by a showing that the job offer was not received by him.
18 DCRR 204.8(b) provides in pertinent part:
> No disqualification will be imposed for job offers made by telephone nor will disqualifications be imposed by reason of the failure of a claimant without good cause to accept a direct offer of available and suitable work unless a job opening actually exists and unless the employer notifies the Board, within 48 hours, exclusive of Sundays and holidays, on the form supplied by the Board for that purpose, of such refusal and at the same time mails a copy of such notice to the claimant. . . .

5. Edwards alleged that the superintendent requested him to work in adverse weather conditions; cursed at him; disassembled his completed work; refused to replace broken saw blades; and ordered him to change job sites, causing claimant inconvenience and unreimbursed gasoline expenses.

6. On June 5, 1974, Price filed an appeal with the Superior Court. Price then filed the present Petition for Review in this court on June 24, 1974. The Board moved to dismiss the Petition for Review for lack of jurisdiction and untimeliness. By its Order of January 16, 1975, this court denied the Motion to Dismiss. Accordingly, on January 21, 1975, Price withdrew its appeal with the Superior Court.

7. D.C.Code 1973, § 46–311(e) provides:
> An appeal tribunal, after affording the parties reasonable opportunity for fair hearing, shall, unless such appeal is withdrawn, affirm or modify the finding of facts and the initial determination. The parties shall be duly notified of the decision of such appeal tribunal, together with the reasons therefor. The Board, under regulations prescribed by the District of Columbia Council, may permit further appeal by any party or may, upon its own motion, affirm, reverse, or modify the decision of the appeal tribunal or may set it aside and order a rehearing or the taking of additional evidence before the same or a different appeal tribunal. Unless a petition for such appeal is filed within ten days of mailing of the decision of an appeal tribunal, or within such ten-day period the Board has taken action on its own motion in accordance with the provisions of this subsection, the decision of the appeal tribunal shall constitute the decision of the Board and shall be effective as such. Any decision of an appeal tribunal which is not so modified or so appealed within such ten-day period is final for all purposes, except as provided in section 46–312, and is not subject to review by the District auditor. All decisions rendered by the Board affirming, reversing, or modifying any decision of an appeal tribunal shall become effective immediately, unless the Board shall otherwise order, and are not subject to review by the District auditor.

■ The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law and is recognized in this jurisdiction. *Tarpley v. District of Columbia*, D.C.App., 342 A.2d 14 (1975); *Smith v. Murphy*, D.C.App., 294 A.2d 357 (1972). *See generally* 3 K. Davis, Administrative Law Treatise § 20.01 *et seq.* (1958 ed., 1965 Supp). The doctrine is "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938).

The requirement that an aggrieved party exhaust his administrative remedies before seeking judicial review is based on a myriad of rational policy considerations. In summarizing the rationale for the doctrine, the Supreme Court, in *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), stressed the need to prevent premature judicial interference with the administrative process before an adequate factual record is developed and before an application of agency expertise to the issues. The Court also stated:

> Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require

that the agency be given a chance to discover and correct its own errors. Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.[8]

Pursuant to the administrative scheme set forth in D.C.Code 1973, § 46–311(e) and its accompanying regulations,[9] an aggrieved party has the right to appeal to the Board for a review of an adverse decision of an appeals examiner. In the case at bar, Price resorted to the courts without first pursuing this additional channel of administrative review. We hold that this failure to exhaust all available administrative remedies is fatal to Price's appeal.

Price contends that it did exhaust its administrative remedies since pursuant to D.C.Code 1973, § 46–311(e), a decision of the appeals examiner becomes the final decision of the Board, if not modified sua sponte by the Board or appealed from within ten days. Price argues, in effect, that its administrative remedies were exhausted since the decision of the appeals examiner became the final decision of the Board after neither the Board nor Price acted within ten days.

■ We reject this argument. First, we find the failure of the Board to consider Price's case sua sponte to be irrelevant to the issue at hand.[10] The duty to exhaust all available administrative remedies is placed on the aggrieved party, not the

---

18 DCRR 303.7(a), promulgated pursuant to the above statute, provides:
 Under subsection 11(e) of the Act the aggrieved party may petition the Board for a reconsideration of the decision of an examiner or appeal tribunal. Such petition must be filed within ten days after the date of notification or mailing of the decision appealed from and shall state the specific grounds relied upon by the petitioner.

8. *McKart, supra* at 195, 89 S.Ct. at 1663.

9. See note 7 *supra*.

10. This is not to say, of course, that we condone the inaction of the Board in this case. The Board should carefully scrutinize, sua sponte, cases such as this which present substantial and important issues of law and social policy. If the Board proposes to change the appeals examiner's decision, the procedure set forth in *Carey v. District Unemployment Compensation Bd.*, D.C.App., 304 A.2d 18 (1973), and *Wallace v. District Unemployment Compensation Bd.*, D.C.App., 289 A.2d 885 (1972), must first be followed.

agency itself. Secondly, we reject the notion that Price can exhaust its administrative remedies through inaction. The theory that an aggrieved party can exhaust his administrative remedies by failing to pursue them is without support in precedent or reasoning. *See Siaba-Fernandez v. Rosenberg,* 302 F.2d 139 (9th Cir. 1962); *Olinger v. Partridge,* 196 F.2d 986 (9th Cir. 1952).

 Price also contends that it would have been a useless and futile gesture to file an appeal with the Board since, in its briefs to this court, the Board has conclusively demonstrated its agreement with the decision of the appeals examiner. We refuse to speculate as to the likely response of the Board to a timely filed appeal.

Price, having failed to invoke a readily available administrative remedy specifically created to correct any errors that may have been committed, cannot now invoke the aid of the courts. Accordingly, the petition is

*Dismissed.*