Eudon **BARNARD**, Plaintiff,

v.

**DISTRICT OF COLUMBIA,**
**et al., Defendants.**

**No. CIV.A.002171RBW.**

United States District Court,
District of Columbia.

Oct. 22, 2002.

---

Elaine Mittleman, Esquire, Falls Church, VA, for Plaintiff.

Patricia A. Jones, Esquire, Senior Litigation Counsel, Office of the Corporation Counsel, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

WALTON, District Judge.

Defendants have filed a motion for judgment on the pleadings or for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies.[1] In opposition, plaintiff argues that there are genuine questions of fact as to whether the defendant's grievance procedure applies to plaintiff's claim, whether defendants have provided sufficient evidence that plaintiff did not exhaust his administrative remedies, and whether the Inmate Grievance Procedure remains available to plaintiff to pursue at this time. After review of the motion, plaintiff's opposition, defendant's reply, and the applicable law, it appears that plaintiff did not exhaust his administrative remedies prior to filing the complaint in this case. Before an order is entered on defendants' motion, however, defendant District of Columbia will be directed to provide further information regarding available administrative remedies.

At the time of the incident about which plaintiff complains he was a prisoner of the District of Columbia Department of Corrections, housed at the Central Facility at the Lorton Correctional Complex. The complaint alleges that plaintiff suffered serious and permanent injuries as a result of an assault by other inmates in July 1997, at a time when no guards were on duty at several posts and therefore could not prevent or stop the assault. Plaintiff alleges that the assault and his injuries were the result of defendants' failure to train and supervise correctional officers assigned to guard posts, failure to provide adequate staffing at guard posts, and deliberate indifference to unreasonably unsafe conditions at the facility.

The Prison Litigation Reform Act provides in relevant part:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 531–32, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). A prisoner must complete the administrative process, "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 741, 121

---

1. Defendants also move for judgment on behalf of Defendant Washington on the ground that plaintiff does not allege that this defendant had personal knowledge of the events about which he complains and the District of Columbia is the proper defendant where the individual is sued in his official capacity. Plaintiff does not oppose this part of the motion, which will be granted.

S.Ct. 1819, 149 L.Ed.2d 958 (2001). Accordingly, a prisoner may file a civil action relating to conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. See *Jackson v. District of Columbia,* 254 F.3d 262, 269 (D.C.Cir.2001); *cf. Johnson v. District of Columbia Dep't of Corrections,* 2002 WL 1349532 (D.C.Cir.2002) (complaint properly dismissed without prejudice when plaintiff alleged that he had not filed a grievance).

In support of their motion, defendants have submitted an affidavit from Dennis Harrison, currently the Deputy Warden for Programs at the Department of Corrections and, from February 2000 to January 2002, the Warden of Central Facility at Lorton.[2] Harrison states that from his review of plaintiff's institutional file, the Inmate Grievance files, and Housing Reviews, "it appears that plaintiff did not file an Inmate Grievance Form relating to the July 19, 1997, alleged attack." *Id.* ¶¶ 5, 6. Harrison accordingly concludes that "[u]pon information and belief, Eudon Barnard did not exhaust his administrative remedies in connection with the July 19, 1997, incident." *Id.* ¶ 8.

Plaintiff does not challenge Harrison's conclusion but argues that the grievance procedure did not cover the kind of claims he raises, and, alternatively, that there may be no procedure available to him now as a result of the closing of the Lorton Correctional Complex. As support for his first position, plaintiff has provided a copy of a Department of Corrections Order dated May 4, 1992, which describes the Inmate Grievance Procedure. A grievance is defined in this Order as:

A written complaint filed by an inmate on his/her own behalf regarding a policy applicable within a correctional institution, *a condition in a correctional institution,* an action involving an inmate in a correctional institution, *or an incident occurring within a correctional institution.* The term 'grievance' does not include complaints relating to parole decisions, decisions of the Adjustment/Housing Boards pursuant to the Lorton Regulations Approval Act, Classification Committee decisions, requests under Freedom of Information Acts, *Inmate Accident Claims, Tort Claims,* and grievances filed on behalf of other inmates.

Plaintiff's Opposition, Exhibit 3, ¶ VI(B)(emphasis added).[3] The Order provides that an inmate who has "a dispute or complaint" should first attempt to resolve "this situation" informally, by discussing the complaint "with the relevant parties or an appropriate DCDC employee." *Id.* ¶ VI(F)(1). If the complaint is not resolved informally, the inmate "may file a formal grievance by completing IGP Form 1." *Id.* ¶ VI(F)(2). The Order further provides that "[e]ach formal grievance must be filed within fifteen (15) calendar days of the incident that precipitates the filing of a grievance." *Id.* ¶ VI(F)(3). "Under extraordinary circumstances," however, "an extension of the filing period may be granted." *Id.* Such requests are to be submitted to the Institution Administrator and shall be acted upon within six calendar days. *Id.* ¶ VI(F)(4). There is a procedure for appealing the decision rendered on a grievance. *Id.* ¶ VI(G).

2. Harrison states that this is the institution where plaintiff "was incarcerated." It does not appear that Harrison has any personal knowledge of the events in question or of plaintiff.

3. Codes attached to the Order list various types of complaints included in the grievance procedure, none of which appear to cover assaults by other inmates, except possibly the catchall phrase "Other" for "complaints not included in the categories above."

Plaintiff alleges that the failure to train and supervise prison guards adequately and the failure to adequately staff control posts resulted in conditions at the Central Facility "posing substantial and obvious risks of violent harm" to inmates. Complaint, ¶ 44. Although alleging a constitutional tort, the complaint essentially challenges conditions at the facility and thus was covered by the grievance procedure. Because plaintiff was hospitalized for several days following the assault and thereafter was involved in housing hearings and his transfer to the Maximum Security Facility, he may have been unable to seek informal resolution of his complaint or to file a formal grievance within fifteen days of the assault.[4] The record does not contain any information about what the administrator of the institution would consider "extraordinary circumstances" that would justify an extension of the filing period.

The failure to exhaust administrative remedies is not an absolute bar but rather a condition precedent to the filing of a lawsuit. Dismissals for failure to exhaust are therefore without prejudice, leaving the plaintiff free to re-file his complaint after he exhausts whatever administrative procedures are available. *See Ali v. District of Columbia,* 278 F.3d 1, 5–6 (D.C.Cir.2002); *Jackson v. District of Columbia,* 254 F.3d 262 (D.C.Cir.2001). Thus, if there are now no grievance procedures available to plaintiff, it would be futile to dismiss this case without prejudice to allow plaintiff to exhaust his non-existent administrative remedies. Therefore, defense counsel is directed to advise the Court and plaintiff's counsel whether administrative remedies are now available to a former inmate at the Lorton Correctional Complex, the procedure for exhausting those remedies if they exist, and if administrative remedies are not currently available, what if any impact that has on plaintiff's ability to pursue this lawsuit. Defendant is also directed to provide documents describing any standards to be applied by administrators in ruling on a request for an extension of the time for filing a grievance based on "extraordinary circumstances."

It is by the Court this 21st day of October, 2002,

**ORDERED** that within 21 days of the date of this Order, defendants shall file a statement explaining what administrative remedies, if any, are now available to a former inmate at the Lorton Correctional Complex, the procedure for exhausting those remedies, what if any impact the non-existence of administrative remedies would have on plaintiff's ability to pursue this lawsuit, and the circumstances under which an extension of the time within which to file a grievance will be granted. It is

**FURTHER ORDERED** that the complaint is **DISMISSED** with prejudice as to defendant Washington. It is

**FURTHER ORDERED** that the status conference in this case is rescheduled for December 12, 2002 at 9:00 a.m.

---

**4.** The authorities obviously were aware of the assault immediately after it occurred. Plaintiff has submitted copies of a July 23, 1997, Memorandum from the Warden to the Deputy Director for Institutions regarding the assault on plaintiff by other inmates, and three reports of housing reviews conducted at the Maximum Security Facility in September and October 1997. These reflect that after the assault, plaintiff was taken to the hospital. He had a housing hearing at the Central Facility on July 30, after which he was transferred to the Maximum Security Facility and placed in involuntary protective custody, possibly on the fifteenth day after the assault, August 14. *See also* Harrison Aff., ¶ 7.