**Freddie ARTIS–BEY, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 03–CV–220.**

District of Columbia Court of Appeals.

Argued Dec. 1, 2004.
Decided Oct. 13, 2005.

Geoffrey D. Allen, Washington, DC, for appellant.

Michael F. Wasserman, Assistant Attorney General for the District of Columbia at the time the brief was filed, with whom Robert J. Spagnoletti, Attorney General, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellee.

Deborah M. Golden for D.C. Prisoners' Legal Services Project, D.C. Cure, and Our Place, D.C., amici curiae in support of appellant.

Before WASHINGTON, Chief Judge,[1] RUIZ, Associate Judge, and KERN, Senior Judge.

RUIZ, Associate Judge:

This case arises out of appellant's claim that prison guards assaulted him while he was a prisoner in District of Columbia jail (D.C. jail). It requires us to parse the Inmate Grievance Procedure (IGP) of the District of Columbia Department of Corrections (DOC) and to do so in light of the requirement of the Prison Litigation Reform Act that administrative remedies be exhausted before a court action can be instituted claiming a violation of federal law. We hold that appellant's substantial compliance with the correctional facility's grievance procedure satisfies the exhaustion requirement of the Prison Litigation Reform Act. We, therefore, reverse and remand for further proceedings consistent with this opinion.

## I.

Appellant claims that on March 31, 2000, when he was a prisoner in D.C. jail, several D.C. Corrections staff persons assaulted him while he was talking on the jail's prisoner telephone. The subject of this appeal is not the merit of his claim—which has yet to be tested—but rather the trial court's order granting summary judgment for the District and dismissing appellant's complaint with prejudice for failure to file timely administrative appeals in conformance with the procedures established by the Department of Corrections ("DOC").

We set out the procedural history of appellant's administrative grievance, as related by appellant,[2] and his subsequent

1. Chief Judge Washington was an Associate Judge at the time of oral argument. He became Chief Judge on August 6, 2005.

2. With its motion for summary judgment, the District filed an affidavit from an official at the D.C. jail attesting that it did not receive appellant's initial administrative complaint. In opposing summary judgment, appellant filed copies of his initial grievance and appeals, along with an affidavit attesting to the procedural history of his complaint. One copy of appellant's complaint shows a handwritten response which appears to have been signed by the Jail Administrator and dated September 6, 2000.

In granting summary judgment to the District, the trial court assumed the veracity of the appellant's affidavit and his documentary evidence. We apply the same standard as the trial court and similarly view contested issues of fact in the light most favorable to the nonmovant in determining whether the movant was entitled to judgment as a matter of law. *See Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 868 (D.C.1997) (holding that summary judgment is reviewed *de novo*, using the

complaint in Superior Court. On April 6, 2000, within a week of the alleged assault, appellant filed a formal grievance with the Administrator of the jail. He did not, however, receive any response. In fact, he waited almost four months for a response, then filed the same grievance with the Administrator on August 14. This time, appellant received a response, dated September 6, which stated, without elaboration, that "[t]his matter has been resolved." Appellant claims he received the Administrator's response on September 29, and immediately filed an appeal on September 30 with the DOC Associate Director. He received no response. Undeterred, appellant filed a second appeal with the DOC Associate Director on October 21; again, he had no response. On November 17, appellant filed an appeal with the DOC Director, with the same result: no response.

On June 27, 2001, appellant filed suit in the District of Columbia Superior Court against the District and several "John Does" for money damages arising out of the March 31, 2000 incident, claiming under both federal and District of Columbia law.[3] On February 19, 2002, appellant filed a motion to amend the complaint to identify by name the five officers he claims assaulted him. Although the trial court granted appellant's motion to amend his complaint, the officers were never served, nor did they enter appearances or participate in any of the proceedings in the trial court. The District filed motions to dismiss or, in the alternative, for summary judgment. *See* Super. Ct. Civ. R. 12(b)(6)

(dismissal may be granted for failure to state a claim upon which relief may be granted); Super. Ct. Civ. R. 56 (summary judgment). The federal claims, the District argued, are barred by appellant's failure to meet the Prison Litigation Reform Act's exhaustion requirement. The District argued that the common law claims are precluded because appellant did not give timely notification to the Mayor's office as required by D.C.Code § 12–309 (2001). The trial court granted summary judgment to the District and dismissed appellant's complaint with prejudice after determining that appellant's claims were barred by the Prison Litigation Reform Act because he did not properly follow the DOC's grievance appeal process. Appellant timely noted this appeal.

## II.

■ As a preliminary matter, the District raises a jurisdictional issue: whether the trial court's order dismissing the complaint is final for purposes of appeal. The District notes that in its motions it requested judgment only in its favor, not on behalf of the five individual officers whom the trial court had permitted appellant to join as co-defendants with the District. It is our well-established rule that a judgment of the trial court is not appealable unless it disposes of all claims against all defendants. *See Umana v. Swidler & Berlin, Chartered,* 669 A.2d 717, 721 (D.C. 1995) (holding that an order is not final for purposes of appeal if there remain outstanding claims against any defendants).

---

same standard as the trial court and viewing the evidence in the light most favorable to the non-movant). We express no opinion, however, on the disputed factual questions.

3. The complaint set out five counts, four of which were against the District: Count I, Negligence (excessive force); Count II, Assault and Battery; Count IV, Medical Negli-

gence; and Count V, § 1983 claim (failure to provide medical assistance in violation of right to be free from cruel and unusual punishment under the Eighth Amendment). Count III was also a § 1983 claim, but directed to the individual corrections officers, and claimed that the assault was a violation of the Eighth Amendment.

Therefore, if appellant's claims against the five individual officers are still outstanding in Superior Court, the order of dismissal is not appealable. As noted, although the trial court granted appellant's motion to amend his complaint, appellant did not actually file an amended complaint joining the officers, nor did he serve them, nor did they appear before the court. The jurisdictional question is whether, assuming the complaint was amended to include claims against the five individuals, the court's order dismissing the complaint was a final order with regard to these co-defendants as well as the District.[4] We conclude that it was.

■ In its order dismissing the complaint, the trial court not only granted summary judgment for the District, but also "further ordered that the Complaint is dismissed, with prejudice." In *Moradi v. Protas, Kay, Spivok & Protas, Chartered,* 494 A.2d 1329 (D.C.1985), we faced a similar situation in which the trial court dismissed the plaintiff's entire complaint on motion from one co-defendant. When the plaintiff then sought to appeal, one of the other co-defendants argued that the court lacked jurisdiction because he "was not served with process, and that the claim against him was therefore still pending . . . ." *Id.* at 1332 n. 6. We held that because the trial "court went beyond the limits of appellee's motion and dismissed

the entire complaint, including the claim against [the unserved co-defendant] . . . there [was] no unresolved fragment of this case left pending in the trial court . . . ." *Id.* As a result, we concluded, we had jurisdiction to hear the appeal from the order dismissing the complaint. *See id.* In this case, both the language of the court's order of dismissal, as well as its rationale for dismissing the complaint, lead us to conclude that the trial court dismissed the entire complaint.[5] As in *Moradi,* that order was appealable as a final order. *Cf. Griffith v. Sandler,* 99 A.2d 194, 194 (D.C.1953) (citing Super. Ct. Civ. R. 54(b)) (holding, in a case where some of the co-defendants had not been served, that the court has no jurisdiction where "final judgment [has been] entered on one or more but less than all of the claims").

## III.

### A. The Prison Litigation Reform Act and appellant's common law tort claims

■ The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2003) (hereinafter "PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." The purpose of the PLRA is to give prison authorities notice

---

4. Although the District raised a potential jurisdictional question, its position is that the order was final and appealable. It proposes two grounds for that conclusion: that the complaint was not amended to include the individual defendants because appellant effectively withdrew his request by not filing an amended complaint, or that the complaint, though amended, was dismissed in its entirety by the court's order of dismissal. Although we assume that appellant's complaint was amended to include claims against the five individuals for purposes of our analysis, we do not thereby imply that these individuals, who are not parties to this appeal, were

joined as defendants merely as a result of the trial court's order granting appellant's motion to amend, without proper service.

5. As we discuss *infra,* the trial court appears to have (incorrectly) construed failure to satisfy the exhaustion requirement of the Prison Litigation Reform Act as precluding any action arising out of the incident complained of, even non-federal claims, and therefore a bar against any relief from any of the defendants. Based on the trial court's reasoning, the order of dismissal is best understood as disposing of all claims in the complaint.

of problems in correctional facilities and an opportunity to resolve them pursuant to established internal procedures prior to litigation in court. *See Porter v. Nussle*, 534 U.S. 516, 524–25, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, the exhaustion requirement has been interpreted as applying "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages . . . ."[6] *Id.* at 524, 122 S.Ct. 983 (citing *Booth v. Churner*, 532 U.S. 731, 740–41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). As the PLRA states, however, it applies only to claims pursuant to section 1983 or other federal law, not to state law claims. *See, e.g., Lopez v. Smiley*, 375 F.Supp.2d 19, 29 (D.Conn.2005) (allowing inmate to proceed on common law claim for battery while dismissing his federal claim, holding that a state law "tort claim is not barred by . . . [a failure to meet] the exhaustion requirements of the PLRA"). In addition to federal civil rights claims, appellant stated in his complaint the common law tort claims of negligence, assault and battery, and medical negligence. The trial court therefore erred in dismissing these claims for failure to meet the PLRA's exhaustion requirement.

### B. Section 12–309 notice requirement

The District argues that the common law claims are barred nevertheless, because appellant failed to give the Mayor adequate notice of his intended claims before he filed his complaint. District law requires a claimant against the District to give the Mayor's Office written notice "within six months after the injury or damage was sustained . . . of the approximate time, place, cause, and circumstances of the injury or damage." D.C.Code § 12–309 (2001). The District presented an affidavit asserting that the Mayor's Office never received written notice from the appellant of his injury. Appellant submitted an affidavit in which he swore that he sent a timely, written notice to the Mayor's Office. The motions judge determined that the dueling affidavits created a question of fact requiring an evidentiary hearing, which it scheduled to be held before the trial judge once appellant was released. Upon his release, appellant filed a supplemental affidavit to which he attached a copy of the notice he claimed to have sent to the Mayor. Shortly after the hearing,[7] the trial court issued an order denying "at this time" the District's motion to dismiss the common law tort claims. There is no finding by the trial court in the record concerning the notice appellant claims to have filed in satisfaction of D.C.Code § 12–309.[8]

Because the trial court subsequently dismissed appellant's complaint, it

---

6. The grievance procedure of the DOC, for example, is designed to give the correctional facility an opportunity to remedy problems "regarding a policy applicable within a correctional institution, a condition . . . an action involving an inmate . . . or an incident," D.C. DOC Order 4030.1D, § VI(B) (May 4, 1992) (establishing the IGP), but is not designed to resolve tort claims for damages. Under the DOC regulations, "[t]he term 'grievance' does not include complaints relating to . . . Inmate Accident Claims, [or] *Tort Claims*." IGP § VI(B) (emphasis added).

7. We do not have a transcript of the hearing that was scheduled for October 25, 2002, to resolve the factual conflict between appellant and the District concerning the § 12–309 notice. According to the jacket entry for that date, and the District's pleadings in support of its motion to dismiss, however, there was a status, not an evidentiary hearing on that date.

8. The District claims that appellant's notice, even if timely filed, was defective because it did not designate where in the jail the incident took place. Appellant made clear in his notice, however, that he was on the phone

did not finally determine whether appellant had preserved his common law causes of action by filing a timely § 12–309 notice. In granting the District's motion for summary judgment and dismissing the complaint, the trial court focused exclusively on whether appellant had properly pursued his administrative remedies and dismissed appellant's complaint for failure to satisfy the exhaustion requirement of the PLRA. As we have discussed, the PLRA exhaustion requirement does not apply to appellant's non-federal claims.[9] On this record, it therefore was error for the trial court to dismiss appellant's tort claims without first finding that he did not file notice with the Mayor's office as required by § 12–309.[10]

## IV.

■ We therefore turn to the trial court's dismissal of appellant's federal claims for failure to follow the Inmate Grievance Procedures established by the DOC. See DOC Order 4030.1D (May 4, 1992) (establishing the IGP). The IGP requires that an inmate file a grievance with the Administrator of the institution where he is housed within fifteen calendar days of the incident giving rise to the grievance. See IGP § VII(F)(3) ("Each formal grievance must be filed within fifteen (15) calendar days of the incident ....."). The Administrator of the institution is required to respond within fifteen calendar days. See IGP § VII(F)(5) ("Institution Administrators shall provide a written response to inmate grievances within fifteen (15) calendar days ....."). The IGP provides two levels of appeal: first to the Associate Director of DOC, and finally to the DOC Director. See IGP § VII(G)(3–4). At each level, the inmate is given five days to appeal, and the DOC has fifteen days to respond to the appeal. See IGP § VII(G)(3–5)[11] Appellant filed a timely initial grievance on April 6, 2000, six days after the assault in question allegedly occurred on March 31, 2000. Appellant

when the alleged assault occurred. At a hearing, the location of the telephones available to inmates in D.C. jail could be established, and based on the evidence presented, the trial court could determine whether appellant's notice was so vague regarding the location of the claimed assault as to defeat the notice's purpose. As discussed above, however, we cannot determine on this record whether the trial court ever made such a finding.

9. Conversely, any failure to satisfy the § 12–309 notice requirement does not bar appellant's § 1983 claims because states cannot require a plaintiff to satisfy a state notice-of-claim requirement in order to pursue a federal civil rights claim in state court. See Felder v. Casey, 487 U.S. 131, 144–45, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). "There is no indication in the legislative history surrounding the PLRA to suggest that Congress intended to legislatively overrule Felder v. Casey, ... which held that state law notice-of-claim statutes are inapplicable to § 1983 litigation." Barry v. Ratelle, 985 F.Supp. 1235, 1238 (S.D.Cal.1997).

10. "Compliance with § 12–309 is a question of law that we review de novo." District of Columbia v. Arnold & Porter, 756 A.2d 427, 436 (D.C.2000) (quoting District of Columbia v. Ross, 697 A.2d 14, 17 (D.C.1997) (citing Wharton v. District of Columbia, 666 A.2d 1227, 1230 (D.C.1995) (other citation omitted))). It is, therefore, an issue for the trial court to decide prior to trial, since "[u]nless [a plaintiff] demonstrates compliance with the requirements of § 12–309, a plaintiff's suit against the District is properly dismissed because no right of action or entitlement to maintain an action accrues." Id.

11. Under the IGP, the process and deadlines for appeal vary depending on whether an inmate is housed in a "community correctional center" (presumably a half-way house) or in a "correctional institution" (e.g., the jail). Compare IGP § VII(G)(1–2) with § VII(G)(3). Since appellant was housed in the D.C. jail when he pursued his complaint, we apply the process and deadlines relevant to complaints in a "correctional institution."

claims that he received no response from the correctional facility within the fifteen days prescribed by the IGP.[12] After filing his complaint a second time on August 14, he received a response, dated September 6, informing him that the matter had been "resolved." Knowing this was not so, he immediately appealed to the DOC Associate Director on September 30, the day after appellant claims he received the Administrator's response. Upon receiving no response, appellant refiled his appeal with the Associate Director on October 21. When he again had no response, he filed an appeal with the DOC Director on November 17. The Director, also, did not respond.

The trial court held, and the District argues, that appellant's administrative appeals were untimely because, even if he did not receive a response, he was required to appeal within five days of when the correctional facility officials should have, under the rules, responded to his grievance. Thus, they contend, appellant erred by waiting until August to refile his initial grievance with the jail Administrator, when he should have appealed to the Associate Director by April 26, five days after the lapse of the Administrator's fifteen-day deadline to respond following appellant's April 6 initial grievance. And similarly, instead of filing a second appeal with the Associate Director, appellant should have continued to appeal up the chain, to the Director, when the DOC Associate Director did not make a timely response to his first appeal. By failing to file the proper appeals, the District argues, appellant abandoned the process of administrative remedy.

The District's argument is based on the provision in the IGP that "[w]henever a grievance does not receive a response within the prescribed response time ... the inmate may proceed to the next step in the grievance procedure." IGP § VII(F)(7). The District interprets this provision as deeming a nonresponse within the prescribed fifteen days to be a denial which tolls the five-day period within which an inmate must appeal. The District maintains that this provision gives correctional facility officials the option not to respond to a grievance, and requires the inmate to continue to prosecute his claim. We think that the District's interpretation is not supported by a contextual reading of the IGP and is contrary to its purpose.

The IGP provides that

[i]n any instance when a sufficient response cannot be rendered within the prescribed time limitations, the affected inmate must be notified of this fact in writing. Whenever a grievance does not receive a response within the prescribed response time, as established in this Order, the inmate may proceed to the next step in the grievance procedure. An inmate may waive this right if he/she has agreed in writing to an extension of the allowable response time and the specific length of the extension is also stated in writing.

*Id.*

The District likens subsection (F)(7) to provisions in other areas of administrative law which deem an agency's lack of response to be a formal denial, triggering the deadline for further appeal. The statutes on which the District relies for analogous support expressly state that non-

---

**12.** As previously noted, the District disputes that it received the initial grievance. Our analysis assumes, as it must for summary judgment purposes, that the facts are as set out in appellant's affidavit and supporting documents. *See Truitt v. Miller,* 407 A.2d 1073, 1077 (D.C.1979) (on review of summary judgment the evidence is viewed in the light most favorable to the party opposing the motion).

response is deemed to be an appealable denial. For example, if the Public Service Commission does not respond to a request for reconsideration, the statute provides that such nonresponse is deemed a denial which tolls the period for judicial review. *See* D.C.Code § 34–604(b) (2001) ("Failure by the Commission to act upon such application within such period shall be deemed a denial thereof."); D.C.Code § 2–308.05(d) (2001) (providing that in claims by contractors against the District, "[a]ny failure by the contracting officer to issue a decision on a contract claim within the required time period will be deemed a denial ... and will authorize the commencement of an appeal ....."); D.C.Code § 32–1522(b)(2) (2001) (upon request for review of a worker's compensation award, "[i]f a final decision is not rendered within [the] 45–day period [for review] the compensation order shall be considered a final decision for purposes of appeal ....."). There is no comparable explicit provision in the IGP.

On the contrary, the IGP imposes an affirmative duty on the correctional institution to respond in writing to any grievance: "Institution Administrators *shall* provide a written response to inmate grievances within fifteen (15) calendar days ...." IGP § VII(F)(5) (emphasis added). Similarly, the IGP provides that the DOC Associate Director and DOC Director "*shall* respond" to an inmate's appeal "within (15) calendar days following its receipt." IGP § VII(G)(3–5). In view of the mandatory language of the regulation, DOC officials do not have the option not to respond to inmate grievances and appeals. Moreover, the IGP provides that

*some* response "must" be provided "in writing" within fifteen days of the inmate's initial grievance or appeal, even if only to notify the inmate that a "sufficient response" will not "be rendered within the prescribed time limitations." IGP § VII(F)(5,7). In contrast to the mandatory language used in relation to the obligation of corrections officials to respond or give notice to the inmate of a late response, the regulation provides that the inmate "may" appeal if no timely response is received. IGP § VII(F)(7).[13] The District's argument stands the plain meaning of subsection (F)(7) on its head by interpreting it to impose on the inmate the responsibility to act even when the DOC has failed to follow its own procedures.

The District places great reliance on the provision that contemplates an inmate's written agreement to an extension of the prescribed time for the institution's response to a grievance,[14] interpreting it to imply that an inmate who fails to secure a written agreement to an extension thereby waives his right to appeal. In our view, that interpretation is contrary to the obvious purpose of the provision, which is to place on the correctional facility the burden of obtaining the inmate's written permission to a delay in responding to a grievance. Moreover, the District's interpretation turns on interpreting "may" to mean "must." The allowance for appeal by an inmate in the absence of a timely response is not, however, mandatory, but functions as a failsafe to protect the inmate's access to further administrative remedies despite failure by the institution to respond. The provision regarding waiv-

---

**13.** "Whenever a grievance does not receive a response within the prescribed response time, as established in this Order, the inmate may proceed to the next step in the grievance procedure." IGP § VII(F)(7).

**14.** "An inmate may waive this right [to appeal after not receiving a response in fifteen days] if he/she has agreed in writing to an extension of the allowable response time and the specific length of the extension is also stated in writing." IGP § VII(F)(7).

er of the right to an appeal in such a situation requires that the inmate's consent be in writing, and, in context, is for the purpose of accommodating the institution's request for more time to respond to the grievance. Nothing in the language of subsection (F)(7) prevents an inmate from waiting for DOC's response, or requires him to appeal to the next level when the designated DOC official fails to make a timely response, on pain of defaulting further recourse to the grievance process.[15] The tenor of subsection (F)(7) is to ensure timely action by corrections officials and, where that is not possible, to provide a means by which they can extend the time to make a substantive response if the inmate consents. That the inmate is free to proceed with appeal without further delay does not mean that he is required to do so.

In addition to being grounded in the language of the regulation, our interpretation serves the purpose of resolving inmate complaints, if possible, at the lowest administrative level, without escalating the grievance process unnecessarily. The policy of the DOC, as stated in the IGP, is "to resolve inmate complaints through informal means whenever possible and provide an expedient formal system for resolving grievances when informal procedures have failed. Inmates are expected to use the intra-Departmental grievance procedure before resorting to litigation." IGP § II. If every unconsented delay in response to a grievance required appeal, inmates would have to appeal to higher authorities over grievances that could and should be resolved at lower levels, simply to avoid

forfeiting their right to an eventual civil action. The IGP provision that late filing "*can* result in a grievance being dismissed" suggests that untimeliness is not necessarily an absolute bar to consideration of the grievance. IGP § VII(F)(9) (emphasis added). That, in fact, seems to have been the case here, where the jail Administrator considered appellant's grievance only after he refiled in August, more than four months after the alleged assault, and denied it for reasons other than untimeliness. The IGP's purpose of allowing inmate complaints to be addressed at a practical level within the institution would be undermined by an emphasis on procedural gamesmanship.

For these reasons, the trial court erred in concluding that appellant abandoned the administrative grievance process by failing to appeal immediately when corrections officers failed to respond within the time periods set out in the IGP. We base our conclusion on the language of the IGP and appellant's actions. For purposes of deciding whether the District was entitled to judgment as a matter of law, the trial court assumed—as must we—that appellant timely filed an initial grievance, and pursued appeals to all levels of the correctional facility administration designated by the IGP. This is not a case where appellant claims that he had no obligation to pursue his administrative remedies. "The theory that an aggrieved party can exhaust his administrative remedies by failing to pursue them is without support in precedent or reasoning." *Malcolm Price, Inc. v.*

---

**15.** We reject the District's argument, relying on *Siler v. District of Columbia Dep't of Employment Servs.*, 525 A.2d 620, 622 (D.C. 1987), that where a regulation permits—but does not require—a particular step in the administrative process, a claimant is not relieved of the obligation to exhaust administrative remedies, so long as they remain available. The language in *Siler* is mere dicta, as

the holding in that case was premised on the fact that, by not pursuing an available administrative hearing, there was no basis for the court's "contested case" jurisdiction under D.C.Code § 1–1510 (2001). *See id.* This is an appeal from the trial court's dismissal of an action brought in Superior Court, and does not rely on our authority to review contested cases.

*District of Columbia Unemployment Comp. Bd.*, 350 A.2d 730, 734 (D.C.1976).

■ The issue, therefore, is not whether appellant availed himself of administrative remedies, but whether he did so timely. Even if, under his version of the course of the administrative proceedings, appellant can be faulted for waiting more than four months after the March incident to refile his complaint with the jail Administrator in August, and faulted further for appealing to the DOC Associate Director a second time instead of proceeding directly to the final step (appeal to the DOC Director), appellant, at least, substantially complied with the IGP—particularly when compared with the DOC's apparent failure to respond at almost every step of the proceeding.[16] The District disputes, however, that appellant filed an initial grievance shortly after the alleged assault, but waited four months to file his first grievance with the jail. Because factual issues are unresolved concerning the administrative proceedings—what was filed and when—the question remains whether substantial compliance with the IGP is sufficient to satisfy the PLRA's requirement that administrative remedies be exhausted before filing suit under federal law.[17]

**16.** When the correctional facility Administrator did respond, to the second filing of the grievance, the response was a cryptic and apparently incorrect statement that the complaint had already been "resolved." The IGP requires that responses to inmate grievances "provide written justification for [the] decision . . . rendered . . . ." IGP § VII(F)(8).

**17.** Although the District did not argue in the trial court (and the trial court did not rule) that appellant's common law claims should be dismissed—outside of the PLRA requirement—for failure to exhaust administrative remedies, the District makes the argument on appeal. "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law and is recognized in this jurisdiction." *Malcolm Price*, 350 A.2d at 733. The "basic policy of

## V.

■ The trial court held in its order dismissing the complaint that the time limits for appeal in the administrative grievance process are mandatory and jurisdictional in nature, and that since appellant failed to appeal timely when he did not receive a response to his initial complaint, and later failed to timely appeal to the correct officials, he did not properly exhaust his administrative remedies, as required by the PLRA. *See* 42 U.S.C. § 1997e(a). A premise underlying the trial court's ruling and the District's argument is that the PLRA contains within its administrative remedy exhaustion requirement a procedural default rule, such that any deviation by an inmate from the institution's grievance procedure constitutes a failure to exhaust administrative remedies that results in forfeiture of the inmate's right to file suit.

Federal circuits are split on "the question of how inmates' deviations from prison grievance procedures and rules should be treated for the purposes of PLRA exhaustion." *Giano v. Goord,* 380 F.3d 670, 676 (2d Cir.2004).[18] The Second, Sixth and

the law [is] that administrative remedies should be exhausted so long as the agency clearly has jurisdiction over the case and so long as resort to the agency is not obviously futile." *Sohm v. Fowler,* 124 U.S.App. D.C. 382, 384–85, 365 F.2d 915, 917–18 (1966). As we discuss, appellant's substantial compliance with the IGP would satisfy that requirement.

**18.** The amici cite several cases from the District of Columbia federal courts in support of the proposition that "exhaustion under the PLRA does not require strict compliance with every arbitrary technical requirement" of grievance procedures. Despite the inference the amici seek to draw from these cases, however, the District of Columbia Circuit and the District Court have not directly addressed

Ninth Circuits have held that "so long as an inmate presented his grievance to prison officials and appealed through each level of the appellate hierarchy, he need not have complied with the state's time limits for filing grievances or appeals." *Id.* (citing *Thomas v. Woolum,* 337 F.3d 720, 726 (6th Cir.2003)); *Ngo v. Woodford,* 403 F.3d 620, 629–31 (9th Cir.2005) (refusing to sustain the dismissal of an inmate's federal claim where the grievance had been filed late, finding "[p]rocedural default" not to be an "inextricable element of the PLRA's exhaustion element").

▇▇▇ The Third, Fifth, Seventh, Tenth and Eleventh Circuits, in contrast, have adopted a strict procedural default rule by analogy to the law of habeas corpus. For example, in *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002), the Seventh Circuit held that "to exhaust administrative remedies, a person must follow the rules governing filing and prosecution of a claim," such that "[i]f the state stands on its time limits and rejects the filing as too late, then state remedies have not been properly invoked." In *Ross v. County of Bernalillo,* 365 F.3d 1181, 1186 (10th Cir. 2004), the Tenth Circuit joined "the Seventh Circuit in holding that the PLRA, like [the federal habeas corpus statute], contains a procedural default concept within its exhaustion requirement." [19] *See also Johnson v. Meadows,* 418 F.3d 1152, 1157 (11th Cir.2005) (joining "those circuits that have concluded that an untimely grievance does not satisfy the exhaustion requirement of the PLRA"); *Spruill v. Gillis,* 372 F.3d 218, 228–30 (3d Cir.2004) (comparing the habeas corpus analogy employed by the Tenth Circuit in *Ross* to the federal civil rights analogy drawn by the Sixth

this issue. *See Jackson v. District of Columbia,* 349 U.S.App. D.C. 185, 193–94, 254 F.3d 262, 270–71 (2001) (holding that because inmate's grievance was still in process at the time trial began, his federal claim was not yet ripe); *Bethea v. United States Parole Comm'n & Fed. Bureau of Prisons,* 56 Fed.Appx. 514, 515 (D.C.Cir.2003) (prison conceded that inmate had exhausted all administrative remedies); *Gartrell v. Ashcroft,* 191 F.Supp.2d 23 (D.D.C.2002) (plaintiffs from *Jackson* refiled their claim after exhausting administrative remedies and obtained relief); *Barnard v. District of Columbia,* 223 F.Supp.2d 211, 214 (D.D.C.2002) ("The failure to exhaust administrative remedies is not an absolute bar but rather a condition precedent to the filing of a lawsuit;" case dismissed without prejudice until plaintiff could show he had exhausted all extant administrative remedies.).

19. Nevertheless, in interpreting the PLRA's requirement that inmates exhaust "such administrative remedies as are available" the Tenth Circuit has held "that the failure [of a correctional facility] to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," and relieves the inmate of the PLRA's burden to exhaust it. *Jernigan v.*

*Stuchell,* 304 F.3d 1030, 1032 (10th Cir.2002) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002); *Foulk v. Charrier,* 262 F.3d 687, 698 (8th Cir.2001); *Underwood v. Wilson,* 151 F.3d 292, 295 (5th Cir.1998)). That statutory argument has not been pressed by the parties, and we do not decide it. It is unpersuasive, however, in light of our interpretation of the IGP as permitting (though not requiring) the inmate to continue to appeal in the face of the institution's non-response.

Appellant made a different argument, that because DOC officials either failed to respond timely or failed to respond at all to appellant's grievance filing and appeals, the District should be estopped from asserting the administrative exhaustion requirement against appellant. It is "well established," however, that "equitable estoppel will not lie against the Government as against private litigants," unless there is some finding of affirmative misconduct. *District of Columbia v. Greene,* 806 A.2d 216, 222 n. 8 (D.C.2002) (quoting *Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). The trial court did not rule on the estoppel argument, so there has been no finding that the District engaged in misconduct; nor do we think that, on the facts on summary judgment, could there be such a finding.

Circuit in *Thomas,* and adopting the former's strict compliance rule, but finding "neither position entirely satisfactory"); *Marsh v. Jones,* 53 F.3d 707, 710 (5th Cir.1995) (upholding dismissal of an inmate's complaint where the administrative grievance had been untimely filed).

The proper measure of required adherence to administrative procedures should be that which achieves the purposes of the PLRA without unduly restricting inmates' access to court. The Supreme Court has expressed the view that the main purpose of the PLRA's exhaustion requirement is to reduce litigation:

> [T]o this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth,* 532 U.S. at 737, 121 S.Ct. 1819. In other instances, the internal review might "filter out some frivolous claims." *Ibid.* And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. *See ibid.; see also [McCarthy v.] Madigan,* 503 U.S. [140, 146, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)].

*Porter,* 534 U.S. at 524–25, 122 S.Ct. 983.

Because the purpose of inmate grievance procedures and the PLRA exhaustion requirement is not to finally adjudicate any and all claims by inmates against their detention facilities,[20] but rather to provide "an opportunity [for the correctional facility] to satisfy those inmate grievances the state wishes to handle internally ... [as] 'an accommodation of our federal system

designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights,'" *Thomas,* 337 F.3d at 726 (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (internal citation omitted)), minor defects in the inmate's execution of the procedure should not be a *per se* bar to civil suit so long as the inmate has provided notice of his or her grievance to the correctional facility at every available level of review. *See Giano,* 380 F.3d at 676. Thus, the rationale underlying the deference in federal habeas corpus rules to final state court adjudications is absent in the context of administrative inmate grievance proceedings. As the Supreme Court has remarked, "technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." *Love v. Pullman Co.,* 404 U.S. 522, 527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972) (referring to the administrative process under Title VII, 42 U.S.C. § 2000e–5); *see also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 761, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979) (declining to bar an age discrimination claim where administrative grievance was filed late). We agree with the Sixth Circuit's reasoning that

> [t]he Supreme Court has not placed any procedural default hurdles upon the congressionally mandated exhaustion requirements for Title VII and the ADEA, which are chiefly concerned with administrative grievances. Thus, simply because the Supreme Court has crafted a procedural default rule in the habeas corpus context to shore up potential end-runs around the exhaustion requirement does not justify extending procedural default outside of the sphere of criminal law. There are key distinctions between the administrative grievance

---

20. As noted, the IGP expressly excludes tort claims. See *supra,* note 6.

process and the habeas process that warrant disparate applications of a procedural default requirement. The notions of comity that prevent federal courts from unduly interfering with the state criminal judicial process in the habeas context do not have precisely the same resonance and intensity when federal courts are analyzing the outcome of a non-criminal state administrative process and when § 1983 interposes the federal courts as a vindicator of federal rights.

*Thomas,* 337 F.3d at 727–28 n. 2. The broad interpretation of exhaustion rules in civil anti-discrimination statutes is therefore more appropriate for the PLRA than the stricter rules applicable to habeas corpus petitions.

In sum, we hold that procedural defects in an inmate's pursuit of administrative remedies do not bar a civil suit *per se,* provided that the inmate substantially complied with the established procedure by filing a grievance and pursuing it through every level of appeal of administrative review. *See, e.g., id.* at 733 (holding, in a case where inmate filed an untimely grievance, that "a prisoner who has presented his or her grievance through one complete round of the prison process has exhausted the available administrative remedies" under the PLRA). A requirement of substantial compliance will further the purposes of the PLRA by preserving the correctional facility's ability to respond to the grievance, and make necessary adjustments in its administration, possibly avoiding litigation. As appellant substantially complied with the IGP, the trial court erred in granting the District summary judgment and dismissing appellant's complaint for failure to satisfy the exhaustion requirement of the PLRA.

We, therefore, reverse and remand for proceedings consistent with this opinion.

*Reversed and Remanded.*